# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**In the matter of an Application to**      )
**Enforce Administrative Subpoena of the**  )
                                        )
**UNITED STATES COMMODITY**             )
**FUTURES TRADING COMMISSION,**         )
                                        )
         **Applicant,**                 )        **Misc. No. 05-235 (RCL)**
                                        )
         **v.**                         )
                                        )
**THE MCGRAW-HILL COMPANIES,**          )
**INC.,**                               )
                                        )
         **Respondent.**                )
_____)


## MEMORANDUM OPINION

This matter comes before this Court on Applicant's Motion [1] for an Order Requiring

Compliance with Administrative Subpoena,[1] filed June 16, 2005.  Applicant ("CFTC") seeks an

order from this Court requiring The McGraw-Hill Companies, Inc. ("McGraw-Hill") to comply

with an administrative subpoena *duces tecum* that the CFTC served upon McGraw-Hill on April

15, 2005 (the "Subpoena").  In a Memorandum in Opposition to Applicant's Motion filed July

15, 2005, McGraw-Hill objects to the Subpoena on the grounds that it cannot be compelled to

reveal confidential information received in the course of news gathering.  Applicant filed a Reply

in Support of its Motion on July 19, 2005.  Subsequently, on July 27, 2005, McGraw-Hill filed a

Surreply in Further Opposition to Applicant's Motion, upon this Court's order granting it leave

---

[1] The subpoena's Document Requests are attached to this Opinion as an Appendix.  As explained *infra* note 2, the name of the energy company has been redacted therefrom.

to do so.  Finally, both parties appeared before this Court for oral argument on September 27, 2005 (the "Hearing").

Upon a thorough review of each party's filings, the applicable law and record herein, this Court finds that Applicant's Motion [1] for an Order Requiring Compliance with Administrative Subpoena should be granted, on the terms indicated *infra* and in the accompanying Order.

## I.  BACKGROUND

Since late 2003, the CFTC has been investigating an energy marketing company ("Energy Company")[2] for violations of the Commodities Exchange Act ("CEA").  Applicant's Mot. 2. The CFTC has evidence that Energy Company attempted to affect prices in the natural gas market by, *inter alia*, reporting false data to Platts, a division of McGraw-Hill.  *Id.* at 3.  Platts publishes daily and biweekly indices and price ranges based, in part, on transaction data submitted by participating companies.  Respt.'s Mem. Opp'n 4-5.  Platts' publications are used by many market participants and traders to set prices for natural gas transactions.  Applicant's Mem. 2.

The CFTC's investigation centers on the actions of one or more of Energy Company's traders during a three-year period.  The CFTC believes that they reported false transaction data in an effort to manipulate the market price for natural gas during a three-year period.  Mansfield Decl. ¶¶ 3, 7, 10-11.  After it subpoenaed and deposed Energy Company insiders, the CFTC sought to review Platts' records of Energy Company's submissions, and issued the Subpoena to that end.  Namely, the CFTC seeks documents from Platts to identify (and/or confirm) instances

---

[2] Since the investigation is non-public, and public knowledge of it could damage Energy Company's reputation, this Court earlier granted a request to seal the record as to the name of Energy Company.

of false reports[3] and to demonstrate that those reports impacted market prices.

McGraw-Hill objects to the Subpoena on several grounds.  Primarily, it argues that Platts, as a news publication, is protected from revealing confidential information received from its sources.  Respt.'s Mem. Opp'n 19-23.  Even though, as McGraw-Hill concedes, the privilege is qualified, it argues that the CFTC has not made the showing needed to overcome the privilege. *Id*. at 26-36.  Specifically, McGraw-Hill argues, the CFTC has failed to demonstrate that the information is crucial to its investigation or that it has exhausted alternative sources.  *Id*.  In the alternative, McGraw-Hill asserts that the Subpoena is overly broad and unduly burdensome.  *Id*. at 36-39.

In response, the CFTC asserts that there is no privilege because Platts is not engaged in traditional news gathering and/or is not disseminating its reports to the public.  Applicant's Mem. 10-15; Applicant's Reply 3-7.  It further argues that, even if a privilege does exist, it is clearly abrogated by the public interest in law enforcement, the CFTC's need for the information and its exhaustion of other sources.  *Id*. at 7-18.

## II.  DISCUSSION

*A.  Reporter's Privilege*

The reporter's privilege originates in the First Amendment's guarantee of a free press. The rationale is that forcing journalists to disclose confidential sources will discourage sources from communicating with reporters, thereby disrupting the "free flow of information protected by the First Amendment."  *Branzburg v. Hayes*, 408 U.S. 665, 679 (1972) (noting petitioners'

---

[3]As the CFTC indicated at the Hearing, each instance of false reporting constitutes a violation of the CEA. Thus, one of the CFTC's purposes in seeking records from Platts is to identify each occurrence.

argument that their claims are based on the First Amendment).  The general rule in legal actions is to favor broad disclosure.  *See, e.g.,* Fed. R. Civ. P. 26(b)(1) (describing the permissible scope of discovery in extremely broad terms); *cf. United States v. Bryan*, 339 U.S. 323, 331 (1950) (noting the long-recognized public interest in truthseeking).  When the constitutional interest of freedom of the press is implicated, however, the reporter may be protected from having to comply with a disclosure request.  *See, e.g., Zerilli v. Smith*, 656 F.2d 705, 711 n.39 (D.C. Cir. 1981) ("The Supreme Court explicitly acknowledged the existence of First Amendment protection for news gathering.") (*citing Branzburg,* 408 U.S. at 681); *Carey v. Hume*, 492 F.2d 631, 636 (D.C. Cir. 1974) (acknowledging the existence of a qualified reporter's privilege).

As is true for other privileges that exempt a party from the usual discovery rules, the party asserting the privilege bears the burden of showing that it applies in a particular case.  *Hutira v. Republic of Iran*, 211 F.Supp. 2d 115, 120 n.4) (D.D.C. 2002) (Lamberth, J.) (*citing Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)); *Alexander v. FBI*, 186 F.R.D. 21, 49 (D.D.C. 1998) (Lamberth, J.) (*quoting In re Grand Jury Subpoena Dated January 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984)).  This Circuit has ruled that the privilege applies to civil actions as well as criminal, *Zerilli*, 656 F.2d at 712, but that, as a qualified privilege, it may be overcome by a compelling interest in disclosure.  Whether the privilege prevails in a given case is determined by a balancing test, *id.*, but because of the strong public interest in news reporting, it is unlikely that the privilege would be overcome in the typical civil case.  *Id.*

*1. Threshold Requirements*

It is self-evident that the reporter's privilege is available only to reporters.  The CFTC argues that Platts does not qualify, characterizing the Platts publications as simply providing the

results of a mathematical formula rather than engaging in editorial judgments.  Applicant's Mem.

10-15; Applicant's Reply 3-7.  McGraw-Hill indicated, however, that Platts' predictions of the

value of natural gas take into account extra-market factors that might affect supply and demand,

such as severe weather or recent legislative activity.  Respt.'s Mem. Opp'n 7.  As such, Platts

engages in journalistic analysis and judgment in addition to simply reporting data.

    While the record reflects that Platts may not be involved in what is most commonly

considered traditional news gathering, the privilege applies to a broad range of news gatherers.

*Cf. Branzburg*, 408 U.S. at 703-05 (noting that any attempt to define news or a newsgatherer for

purposes of the privilege treads dangerously close to discriminating on the basis of content);

WRIGHT ET AL., 23 FED. PRAC. & PROC. EVID. § 5426 (2005) (noting that, under Federal Rule of

Evidence 501, "[p]erhaps the most difficult question in formulating the privilege is determining

the persons to whom it applies" but that "[t]he weight of authority indicates an extremely broad

view of who should be able to claim the privilege").

    In light of these considerations, this Court finds that Platts may claim the reporter's

privilege.  Whether Platts' interest in protecting its confidential sources overcomes the qualified

nature of the privilege, however, is another matter.  It is to that issue that this Court now turns.

## 2.  *Qualified, not absolute, nature of the privilege*

    News gatherers are not entitled to an absolute privilege.  *Zerilli*, 656 F.2d at 712.  The

privilege to protect the confidentiality of one's sources or information received therefrom may be

abrogated by a strong showing by the party seeking the information.  *Id*.  In criminal cases, for

example, the strong public interest in law enforcement can readily overcome the privilege.  *E.g.,*

*Branzburg*, 408 U.S. at 685 ("[T]he great weight of authority is that newsmen are not exempt

from the normal duty of appearing before a grand jury and answering questions relevant to a criminal investigation.").  By contrast, in civil cases, the privilege typically prevails because any interest in overcoming the privilege is by definition a private rather than a public interest.  *Zerilli*, 656 F.2d at 712 (noting that the strong First Amendment interest indicates that "in the ordinary case the *civil* litigant's interest in disclosure should yield to the journalist's privilege") (emphasis added).

The case before this Court is unusual in comparison to most subpoena disputes: it is neither a criminal action nor a purely civil matter.  The CFTC is a federal agency authorized by Congress to investigate violations of law, a posture quite distinct from that of a private litigant seeking personal redress.  At the same time, however, since the CFTC is not investigating criminal wrongdoing, its work does not reach the level of public interest afforded to a grand jury investigation.

As noted previously, it is easier to overcome the privilege in criminal cases because the public has such strong a interest in the safety provided by enforcement of criminal laws.  *Branzburg*, 408 U.S. at 685.  In some circumstances, however, a civil investigation may raise similar interests.  This Court sees no reason why the weight of public interest should turn solely on whether the infraction is punishable by criminal or civil sanctions.  Just as criminal laws aspire to protect the public, the false reporting and price manipulation provisions of the CEA are also designed to protect the public.  Many criminal laws are designed to protect property interests, and the CEA provisions at issue similarly represent protection from property loss

resulting from artificially inflated prices.[4]  To the extent that Platts' publications were erroneous,

the public interest in truthful news reporting – the very interest safeguarded by the privilege – is

threatened.  Finally, because the CFTC is a federal agency acting within congressionally

determined parameters, its investigations are presumed to be undertaken in the public interest.

   Since, in the instant case, the party seeking disclosure is the government pursuing an

enforcement matter, the interests are more akin to those in a criminal case than a purely civil

matter.  Among other things, the concerns attendant upon a private party seeking disclosure are

not significant here.  *See, e.g., Carey*, 492 F.2d 631, 636 n.6 (noting that "[p]rivate litigants are

not similarly charged with the public interest and may be more prone to seek wholesale and

indiscriminate disclosure").  The scope and authority of the CFTC are more similar to that of a

grand jury.  *E.g., Resolution Trust Corp. v. Walde*, 18 F.3d 943, 947 (D.C. Cir. 1994) ("The

Supreme Court has made clear that an agency's investigatory authority is far-reaching, *analogous*

*to that of a grand jury*, which can investigate merely on suspicion that the law is being violated,

or even just because it wants assurance that it is not.") (emphasis added) (internal citations

omitted) (*quoting United States v. Morton Salt*, 338 U.S. 632, 642-43 (1950)).  Therefore, this

Court finds that, while the strong preference for abrogation used in criminal cases does not apply

here, the posture of this matter calls for a more qualified view of the privilege than would be

appropriate in a purely civil case.  It is under this view of the privilege that the balancing test will

be undertaken.

   *3.  The Balancing Test*

---

[4] McGraw-Hill itself notes that Platts' publications play an important role in "maintaining the transparency of the natural gas market" and contributing to the "effective and efficient operation of these markets."  Resp't's Mem. Opp'n 5.

The balancing test requires evaluation of two[5] factors: the need for the information and whether the party seeking the information has exhausted all reasonably available alternative sources. *Zerilli*, 656 F.2d at 713-14.

### a. Need for the Information

The question of need addresses the centrality of the information to the party seeking disclosure. If the information is crucial to the plaintiff's proof, the balance tilts in favor of disclosure. *Zerilli*, 656 F.2d at 713; *Carey*, 492 F.2d at 637. In its investigation of false reporting, the CFTC seeks to prove that Energy Company submitted false data on several occasions, so it needs evidence of incorrect data having been submitted. A request for the data Platts received from Energy Company clearly goes to the heart of proving that the data was false.

The second charge under investigation is whether Energy Company, having submitted false data, did so in an attempt to affect energy prices. The CFTC suspects that Energy Company attempted to manipulate prices by providing false data to Platts, knowing that it would be published and that readers, in turn, would rely upon it to set prices going forward. To determine whether Energy Company's false reports actually did affect prices, or had the potential to do so, the CFTC needs to know how Platts transformed the raw data from companies such as Energy Company into its published indices. The CFTC indicated at the Hearing that it intends to recalculate the prices using correct data to see what effect the false reporting might have had.

---

[5] Some courts also consider whether the journalist is a party to the action, finding that, when it is a party, the interest in disallowing a party to shield itself from liability weighs in favor of abrogating the privilege. *E.g., Zerilli*, 656 F.2d at 714. It might appear that the converse would also be true: that is, if the journalist is not a party, then a court should be more likely to uphold the privilege. This Court has previously noted, however, that this factor has generally been used more to abrogate the privilege when the reporter is a party than to preserve it when the reporter is not. *Hutira* 122 n.8 (*citing Carey*, 492 F.2d at 636-39). Since McGraw-Hill is not a party here, this Court finds that its non-party status is not relevant to the balancing test.

Thus, Platts' formulas are crucial for determining whether Energy Company's false reporting did, or could have, had an effect on prices.

### b. Exhaustion of Alternative Sources

Of equal importance in the balancing test is the extent to which the party seeking disclosure has attempted to obtain the information from other possible sources. "Even when the information is crucial to a litigant's case, reporters should be compelled to disclose their sources only after the litigant has shown that he has exhausted every reasonable alternative source of information." *Zerilli*, 656 F.2d at 713. Thus, before seeking the information from McGraw-Hill, the CFTC must show that it has attempted to obtain the data from other sources, if any. This requirement reflects the principle that the privilege should be abrogated only as a last resort. *Carey*, 492 F.2d at 638. This does not mean, however, that a litigant must engage in an "onerous," "wide-ranging" or "ill-lighted" discovery burden before seeking to obtain the information from a news gatherer. *Id*. at 639.

Energy Company itself would appear to be the first source for the data it reported. The CFTC did obtain from Energy Company some relevant records, but the data provided by Energy Company was incomplete. Only after a review of the data obtained from Energy Company revealed that it was inadequate did the CFTC subpoena McGraw-Hill. This Court has not been directed to any other plausible source of the transaction data Energy Company submitted to Platts.

McGraw-Hill argued at the Hearing that the CFTC should be required first to seek the data from other energy companies who might have inadvertently received and retained the data. This overstates the CFTC's obligation: the CFTC must have exhausted only those alternative

sources that are reasonably available, not every other conceivable source. *Zerilli*, 656 F.2d at 714 (discussing *Carey*, 492 F.2d at 639, for the proposition that while the obligation is "very substantial," "there are some limits to the obligation to pursue alternative sources"). This Court finds that data that may or may not reside in the files of various other unrelated companies is not reasonably available to the CFTC. Accordingly, as there exists no other reasonably available source for this information, the CFTC has sufficiently exhausted alternative sources.

In light of the foregoing, this Court finds that, while Platts is entitled to claim the privilege, it is abrogated by the public interest represented by the CFTC's investigation and the CFTC's showing of need and exhaustion of other sources.

*B.  Burden*

McGraw-Hill argues that, even if Platts is not entitled to the reporter's privilege, the Subpoena is not enforceable because it is "unduly broad and burdensome." Respt.'s Mem. Opp'n 36. This Court must enforce the Subpoena if the information sought is reasonably relevant and not unduly burdensome. *FTC v. Invention Submission Corp.,* 965 F.2d 1086, 1089 (D.C. Cir. 1992) (*quoting FTC v. Texaco, Inc.*, 555 F.2d 862, 872, 873 n. 23 (D.C.Cir. 1977) (en banc) (*quoting United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)), *cert. denied*, 431 U.S. 974 (1977)). As this Court has already found that the information sought goes to the heart of the CFTC's investigation, this Court also finds that the information is reasonably relevant to the CFTC's investigation.

As to burden, this Court first notes that "[s]ome burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest." *Texaco*, 555 F.2d at 882. To demonstrate undue burden, the party resisting the

Subpoena must show that compliance "threatens to unduly disrupt or seriously hinder normal operations of [its] business." *Id*. While this Court is unpersuaded that McGraw-Hill's general complaints of the tediousness of compliance meet the undue burden standard, this Court does agree that some of the Requests are excessively broad on their face and technically call for a larger volume of data than may have been intended by the CFTC. To the extent that these Requests are unduly burdensome, this Court will modify them as explained *infra* Section II.C and in the accompanying Order. As modified, the Subpoena does not impose an impermissible burden on McGraw-Hill.

*C. Modification of the Subpoena*

Under Federal Rule of Civil Procedure 45(c)(3) and relevant case law, this Court may modify a subpoena that it finds to be overly burdensome. *E.g., United States v. Hunton & Williams*, 952 F.Supp. 843 (D.D.C. 1997) ("The enforcement of a subpoena is an independent judicial action, and the court is free to change the terms of an agency subpoena as it sees fit.") (internal citations omitted). McGraw-Hill objects most strenuously to Request Nos. 3, 4 and 5 of the Subpoena. Upon review of the entire Subpoena, this Court finds that all of the other Requests (1-2, 6-14) shall not be modified. Based on a review of the Subpoena and the arguments made by each party at the Hearing, Requests 3, 4 and 5 shall be modified as explained *infra* and in the accompanying Order.

McGraw-Hill objects to Request No. 3 on the grounds that, on its face, it requires McGraw-Hill to provide documents submitted by other energy companies. Doolan Decl. ¶ 23. Agreeing that having to cull its files for data submitted by other energy companies would impose an undue burden on McGraw-Hill, this Court finds that Request No. 3 shall be modified to

request only documents received from Energy Company.  Request No. 3 shall read: "All documents submitted by Energy Company received by McGraw-Hill to gather, calculate and publish price and volume information about natural gas transactions."  As modified, then, McGraw-Hill need only submit those documents it received directly from Energy Company, excluding any documents received from other parties that might reference Energy Company submissions.

Request No. 4, McGraw-Hill notes, seeks documents without regard to McGraw-Hill entity.  Doolan Decl. ¶ 22.  Because the CFTC's investigation is limited to reports made to Platts, Request No. 4 shall be modified to reference only those communications between Platts and Energy Company.  As modified, Request No. 4 shall read: "All documents concerning communications between Energy Company and Platts, including, without limitation, written correspondence (e.g., facsimile), electronic correspondence (e.g., email and/or instant message), telephone logs, audio recordings, notes, memoranda, and diary or journal entries."

Finally, McGraw-Hill argues that Request No. 5 is overly broad.  It notes that the request covers all data from any source.  Doolan Decl. ¶¶ 21, 23.  At the Hearing, the CFTC explained that it seeks this information in order to recalculate the prices based on accurate Energy Company data in order to determine how much Platts' published prices varied from the prices that would have been published if Energy Company had not reported false data.  To complete this exercise, the CFTC needs the actual formulas used, and needs to know how they were used.  This Court is not convinced that it does need to review Platts' internal discussions arising from the process of creating, correcting or reviewing the formulas, and finds that requiring all documents that in any way reference the formulas would be unduly burdensome.  Accordingly, Request No. 5 shall be

modified to read: "All documents reflecting the formulas used to calculate index prices for each natural gas delivery point at which Energy Company submitted price and volume information on each day of the Relevant Time Period."

McGraw-Hill asserts that it has already provided over 11,000 pages of responsive documents in its compliance with an earlier Subpoena.  Respt.'s Mem. Opp'n 12.  As the CFTC stipulated at the Hearing, any documents previously provided need not be provided again.  In complying with the Subpoena, then McGraw-Hill should simply indicate to the CFTC when and how the documents were provided.

### III.  CONCLUSION

For the foregoing reasons, this Court finds that the CFTC's Motion [1] for an Order Requiring Compliance with Administrative Subpoena should be granted.  The Subpoena will, however, be modified in accordance with this Opinion and the accompanying Order.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, October 4, 2005.

**APPENDIX**

<u>CFTC Subpoena Issued April 15, 2005</u>
<u>Document Requests</u>

1.     All documents including, but not limited to, company issued statements, policy, procedures manuals, and literature for or used by or in the orientation and training of current and former McGraw-Hill employees involved in gathering, reporting, and verification of price and volume information about natural gas transactions.

2.     All documents containing any information, which references, indicates or discusses any false, inaccurate or otherwise incorrect price and volume information about natural gas transactions submitted to McGraw-Hill by Energy Company.

3.     All documents reflecting submissions by Energy Company received by or used by McGraw-Hill to gather, calculate and publish price and volume information about natural gas transactions.

4.     All documents concerning communications between Energy Company and McGraw-Hill, including, without limitation, written correspondence (e.g., facsimile), electronic correspondence (e.g., email and/or instant message), telephone logs, audio recordings, notes, memoranda, and diary or journal entries.

5.     All documents reflecting, discussing and implementing the formulas used to calculate index prices for each natural gas delivery point at which Energy Company submitted price and volume information on each day of the Relevant Time Period.

6.     All documents containing or describing any price and volume data about natural gas transactions submitted to McGraw-Hill by Energy Company that were rejected from, or otherwise not included in, a calculation of a price index.

7.     All documents reflecting published prices, including but not limited to, electronic mail, web pages, and newsletters in chronological date order, during the Relevant Time Period.

8.     All documents reflecting any requests or demands from any persons to McGraw-Hill, including but not limited to, subpoenas, discovery demands or informal requests for voluntary disclosures concerning false, inaccurate or otherwise incorrect reporting of price and volume information or manipulation by Energy Company.

9.     All documents produced pursuant to any requests or demands to McGraw-Hill, including subpoenas, discovery demands or informal requests for voluntary disclosures from any person concerning false, inaccurate or otherwise incorrect reporting of price and volume information or manipulation by Energy Company.

10.     All documents reflecting any complaints received from any person or any conversation concerning false, inaccurate or otherwise incorrect price and volume information or manipulation by Energy Company.

11.     All documents concerning McGraw-Hill's methodology for calculating daily index prices for natural gas, which McGraw-Hill provided to the public and/or any company or individual that submitted information about natural gas transactions to McGraw-Hill.

12.     All documents concerning McGraw-Hill's methodology for calculating first of the month index prices for natural gas, which McGraw-Hill provided to the public and/or any company or individual that submitted information about natural gas transactions to McGraw-Hill.

13.     All documents concerning McGraw-Hill's survey of the natural gas markets for information about natural gas transactions, including, without limitation, instructions McGraw-Hill provided to the public about the types of natural gas transactions for which market participants should submit information to McGraw-Hill.

14.     All documents concerning reporting of information about natural gas transactions McGraw-Hill provided to Energy Company, including, without limitation, instructions about the types of natural gas transactions for which Energy Company should submit information.